# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PATRICK R. WILDA, individually  )
and as independent administrator of the  )
Estate of Patrick C. Wilda, Deceased,  )
                              Plaintiff,  )   Case No. 16 C 10088
                                        )
vs.                                        )   Jeffrey T. Gilbert
                                        )   Magistrate Judge
JLG INDUSTRIES, INC.,  )
                                        )
                              Defendant.  )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant JLG Industries, Inc.'s Motion to Preclude [ECF No. 159]. For the reasons set forth below, the Motion is denied.

## BACKGROUND

This product liability case arises out of the alleged wrongful death of Patrick C. Wilda on January 30, 2015. Plaintiff Patrick R. Wilda ("Plaintiff"), individually and as administrator of the Estate of Patrick C. Wilda ("Decedent"), filed suit against Defendant/Third-Party Plaintiff JLG Industries Inc. "(JLG"). Plaintiff alleges that Decedent suffered fatal injuries on January 30, 2015 due to an accident involving a JLG 460SJ boom lift that Decedent's employer had rented from Third-Party Defendant Illini Hi-Reach, Inc.

The last scheduling order entered in this case required the party with the burden of proof to serve Federal Rule 26(a)(2) expert disclosures by July 31, 2018. [ECF No. 108]. That scheduling order further mandated that expert depositions were to be completed by September 28, 2018. *Id.* Plaintiff retained Dr. Therese Rando as an expert witness. Dr. Rando is a psychologist licensed in the State of Rhode Island and is board certified in traumatic stress and bereavement

trauma. On July 31, 2018, Plaintiff served supplemental Rule 26(a)(2) expert disclosures designating Dr. Rando as an expert witness. Plaintiff's disclosures included, among other things, two psychological reports prepared by Dr. Rando opining as to the grief, sorrow, and mental anguish of Decedent's parents.

The underlying issue in JLG's Motion to Preclude involves Dr. Rando's alleged failure to properly disclose before her deposition some of the raw test data and other materials she considered in formulating the opinions set forth in her reports, including computerized interpretive reports and scales from the tests she administered and possibly her personal notes. The parties communicated regarding production of at least some of the disputed information before Dr. Rando's deposition but had not resolved the issues when JLG's counsel flew to Cranston, Rhode Island, to take that deposition on August 28, 2018.

Shortly after the deposition began at 1:00 p.m., Dr. Rando said she was not available to testify beyond 4:00 p.m. that day as she had patient appointments scheduled to begin shortly thereafter. [ECF No. 159], at 7. JLG says it never agreed to such a time constraint, and that Plaintiff's counsel never advised JLG of Dr. Rando's 4:00 p.m. cut-off prior to the start of her deposition or, indeed, before JLG's counsel got on a flight to Rhode Island. Motion [ECF No. 159], at 7. JLG contends that Dr. Rando said Plaintiff's counsel told her prior to the deposition that JLG only intended to proceed with three hours of testimony. Motion [ECF No. 159], at 7.

JLG also states that Dr. Rando arrived for her deposition with a banker's box filled with documents and information. Motion [ECF No. 159], at 7. According to JLG, Dr. Rando would not permit JLG's counsel to inspect the documents unless a confidentiality agreement was in place. *Id*. Dr. Rando also refused to produce or discuss the underlying test data on which her reports are based until a confidentiality agreement was in place. *Id.* The deposition proceeded for less than

an hour when JLG's counsel unilaterally elected to adjourn the deposition due to Dr. Rando's undisclosed 4:00 p.m. time constraint, the box of previously undisclosed materials, and Plaintiff's failure to produce the underlying raw test data to JLG's retained psychologist. Motion [ECF No. 159], at 7-8.

After the deposition, the parties continued to talk about production of the outstanding material and a date to reschedule Dr. Rando's deposition. JLG acknowledges in its Motion that Dr. Rando agreed to produce to JLG's retained expert the test data at issue once a confidentiality agreement or order was signed and/or entered. Motion [ECF No. 159], at 10. Communications, however, stalled again. Plaintiff states that Dr. Rando was not available to resume her deposition on the dates JLG's counsel proposed at the end of September, before the close of expert discovery, and instead proposed October 8, 2018, a date after the close of discovery. Rather than seek relief that would permit it to depose Dr. Rando after the Court's deadline of September 28, 2018, JLG apparently broke off discussions and filed its Motion to Preclude ostensibly because Plaintiff did not propose a date for the resumption of Dr. Rando's deposition that complied with the Court's deadline of September 28, 2018, and because Dr. Rando still had not produced the underlying test data. Motion [ECF No. 159], at 10.

In its Motion to Preclude [ECF No. 159], JLG argues that the Court should bar Dr. Rando from proffering any expert witness testimony in this case pursuant to Federal Rule 37(c)(1) because (1) Dr. Rando did not produce all of the test data she considered in formulating her opinions in violation of Federal Rule 26(a)(2), and (2) Plaintiff deprived JLG of a fair opportunity to conduct Dr. Rando's deposition in violation of Federal Rule 30(d)(1). JLG also argues that the Court should sanction Plaintiff for his ongoing failure to comply with Federal Rules 26(a)(2) and Rule 30(c)(1) and for the unnecessary expenses and fees that JLG incurred in traveling to Rhode

Island for a deposition that was cut short as a result of Plaintiff's alleged failure to notify JLG's counsel of Dr. Rando's three-hour time constraint in advance of the deposition.

## DISCUSSION

Before addressing the merits of JLG's motion, it appears that JLG did not comply fully with Local Rule 37.2 of the Local Rules for the Northern District of Illinois, which requires that a party filing a discovery motion include a statement that the parties have attempted to resolve the issues in person or by telephone. JLG has not provided the required statement. E-mail and letter correspondence between counsel for both parties demonstrates that, to some extent, resolution was attempted but not pursued to conclusion. Given JLG's extreme position that Dr. Rando should be precluded from offering any testimony in this case, however, the parties probably could not have resolved this dispute in any event. In addition, and regrettably, counsels' discussions took an ugly and uncivil turn at the end which undoubtedly did not help. Motion [ECF No. 359-1] (Plaintiff's counsel: "You took a ridiculous bad faith position with the dep and have continued to do so. I'm sure in NY it's called "aggresive" but here in the midwest its known as disingenuous file churning. Enjoy your billables at your clients [sic] expense;" Defendant's counsel: "Your aspersions have no merit, as we have done nothing disrespectful. It is your office that continues to give us the run around regarding Dr. Rando's records and deposition. We have made countless good faith efforts to resolve this amicably. It is now in the court's hands.") Despite JLG's failure to comply with Local Rule 37.2, the Court nonetheless will address the merits of the Motion given the posture of this case and to avoid needless delay and the further expenditure of attorneys' fees.

A federal court has the inherent power to disqualify an expert witness from participating in the litigation. *Yow v. Cottrell, Inc.*, 2007 WL 2304125 (S.D. Ill. Aug. 3, 2007). Under Federal Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a)

or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless that failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). To bar an expert witness's testimony for failure to disclose, the opposing party must establish the following: (1) evidence exists that is clearly relevant to the expert's testimony; and (2) the expert withheld such evidence. *Yow*, 2007 WL 2304125, at *3.

Under Federal Rule of Civil Procedure 26, a testifying expert's report must disclose all opinions that will be expressed, along with the expert witness's basis for such opinions. FED. R. CIV. P. 26(a)(2)(B). The expert witness's report also must disclose "the facts or data considered by the witness in forming [her opinion]." *Id.* The purpose of the expert disclosure requirement is to ensure the opposing party has an adequate basis and opportunity to cross-examine the expert. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). Courts have articulated this rationale as follows: "In the context of pretrial discovery, such power [to preclude an expert] has persuasively been invoked to promote the policy of "effective cross-examination of expert witnesses, which is essential to 'the integrity of the truth finding process' because 'useful cross examination and possible impeachment can only be accomplished by gaining access to all of the information that shaped or potentially influenced the expert witness's opinion.'" *Yow*, 2007 WL 2304125, at *2.

The Court agrees with the general statements of law that JLG includes in its Motion regarding the requirements of Federal Rule 26 and that a district court has the inherent power to exclude a witness. That said, total exclusion of the testimony of an expert witness is an extreme sanction. *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 840 F.Supp.2d 1072, 1082 (N.D. Ill. 2012). Disqualification of an expert witness is a "drastic measure" which courts should hesitate to impose except when absolutely necessary. *Yow*, 2007 WL 2304125, at *9-10 (citing *Owen v.*

*Wangerin*, 985 F.2d 312, 317 (7th Cit. 1993)). Also, disqualification of an expert witness is rare and may be very difficult and costly. *Id.*

Even if this Court were to find a violation of Federal Rule 26, which it does not here for the reasons discussed below, a district court has broad discretion to determine an appropriate remedy. *Allstate Ins. Co.*, 840 F.Supp.2d at 1082. The Seventh Circuit has clearly stated that sanctions are supposed to be proportionate to the prejudice caused by discovery misconduct and are courts are to consider the surrounding circumstances. *See, e.g., Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003). Harsh sanctions are to be employed only as a last resort. *Id.* at 786. Furthermore, there is a "well-established public policy favoring hearing cases on the merits." *Id.*; *see also Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003) (before a court can apply sanctions it must first consider and explain why lesser sanctions would be inappropriate). *See also Chiperas v. Rubin,* 1998 WL 765126*7 (D.D.C. Nov. 3, 1998) (disqualification of expert on facts of case would be an abuse of discretion).

Considering the totality of the circumstances set forth in the current record, the Court finds that preclusion of Dr. Rando's testimony is neither appropriate nor proportional to the alleged prejudice JLG claims it suffered. The Court agrees that Dr. Rando should produce the interpretive reports and scales from the tests she administered to Decedent's parents if she considered that data in forming her opinions within the meaning of Rule 26(a)(2)(B). The Court is not persuaded by Plaintiff's argument that JLG's Motion is moot because JLG has the scantron answer sheets completed by the parents. It is not the scantron sheets that JLG wants produced. JLG wants the computerized interpretive reports and scales generated after the tests were completed and analyzed by the test publisher.

Plaintiff and Dr. Rando admit that Dr. Rando did not produce material variously referred to as interpretive reports, test booklets, scales, and "front matter." It is not clear, though, whether all this material must be disclosed under Rule 26(a)(2)(B). It is possible that the Federal Rules do require that it be disclosed based upon what the Court can glean from the parties' arguments. Because the parties could not get past their disagreement about how the material would be produced, however, they do not fully engage on whether the documents fit within the category of material that must be produced in accordance with Rule 26(a)(2)(B). For the purposes of resolving the present Motion, the Court assumes the interpretive reports, test booklets, scales, and/or front matter referenced by in the parties in their briefs and attached exhibits are subject to production under Rule 26(a)(2)(B).

Dr. Rando testified at her deposition that she disclosed those portions of the computerized interpretive reports that she was "using" in her reports, but she did not produce all the information contained in the computerized interpretive reports. Plaintiff repeats Dr. Rando's position that she produced everything she is "using" in her reports, but that is not the standard under the Federal Rules of Civil Procedure. By commencing negotiations about how the additional materials would be produced, it seems that both parties here acknowledge that material is subject to production under Rule 26. It is far from clear on this record that Dr. Rando ultimately is refusing to produce anything. Dr. Rando did not produce information she felt she could not produce absent a confidentiality arrangement or protocol. It appears that counsel discussed Dr. Rando's concerns about confidentiality before her deposition, JLG's counsel was aware that Dr. Rando had not produced certain materials that counsel had requested be produced before the deposition, and counsel had begun discussions about how to address that issue possibly by having Dr. Rando

produce the information directly to JLG's psychologist expert before the deposition. Motion [ECF No. 159-8].

The Court does not see why this is all Plaintiff's fault. JLG's counsel knew it did not have all the documents it wanted from Dr. Rando when counsel got on the plane to Rhode Island to take her deposition. Dr. Rando was willing and apparently remains willing to produce the documents. This is not a case of an outright refusal to produce documents. Nor is it a case in which the deposing party was unwilling to enter into a confidentiality agreement requested by the expert to facilitate production of assertedly confidential documents. JLG's counsel went down that road immediately after the deposition apparently to accommodate Dr. Rando's concerns. As such, the Court is not persuaded that any potential discovery violation that may have occurred ultimately was not cured by Dr. Rando's willingness to produce the computerized interpretive reports and scales once a confidentiality agreement was signed. Those documents should be produced before Dr. Rando is deposed assuming they are required to be produced under Rule 26(a)(2)(B).

JLG argues that it has been harmed because many months passed during the wrangling about scheduling Dr. Rando's deposition, then many more months passed after the adjourned deposition. Meanwhile, Dr. Rando still has not produced the computerized interpretive reports and the scales, and the time for Dr. Rando to be deposed under the case scheduling order now has passed. All of these "harms," however, can be cured by having the materials produced and giving JLG the opportunity to depose Dr. Rando once it has those materials. The Court believes that result is more proportional and more consistent with the interests of fairness and justice in this case. Denying Plaintiff the opportunity to put forth evidence of the alleged trauma Decedent's parents suffered because of the untimely death of their son, if Plaintiff can do so consistent with the Federal Rules of Civil Procedure, would be an unnecessarily extreme sanction here.

Frankly, the Court does not understand why JLG proceeded with Dr. Rando's deposition on August 28, 2018, when the issue of the production of the raw test data its counsel had been discussing with Plaintiff's counsel had not yet been resolved. Although Dr. Rando initially refused to produce the documents, JLG admits that Dr. Rando was willing to produce those documents to JLG's expert, and she eventually did agree to produce the information once an acceptable confidentiality arrangement was in place. Motion [ECF No. 159], at 6. Based on the record before the Court, JLG chose to proceed with taking Dr. Rando's deposition without having received the documents it had requested and without an acceptable confidentiality arrangement in place that would have allowed production of those documents. It appears that different lawyers at JLG's counsel's office were involved at various points in discussing the scheduling of Dr. Rando's deposition, the production of documents before the deposition, the confidentiality agreement, and in taking the deposition itself. Perhaps this is a case of one hand not knowing fully what the other hand was doing. But that is not a reason to pull the plug on a potentially productive deposition of Dr. Rando and to bar her from ever testifying in this case. Whether Dr. Rando ultimately will be allowed to provide expert testimony at trial, a preemptive order precluding her from ever testifying would be premature if it were entered at this time.

JLG also complains about the fact that Dr. Rando was only available for three hours at her deposition. Pursuant to JLG's amended deposition notice, Dr. Rando was required to appear for her deposition at 1:00 p.m. on August 28, 2018. Originally, the deposition was noticed for 10:00 a.m., but JLG agreed to move the deposition to 1:00 p.m. to accommodate Dr. Rando's schedule. The Court does not know (and no explanation is offered) why JLG agreed to start the deposition at 1:00 p.m. if JLG, in fact, intended to take seven hours of deposition testimony. It would have been unreasonable for JLG to start the deposition at 1:00 p.m. and expect Dr. Rando to sit for her

9

deposition until 8:00 p.m. or later taking into account time for breaks and dinner, without notice that the deposition would proceed in that manner. And there is nothing in the record that shows such notice was given or that schedule was agreed to by the parties.

Plaintiff is silent on why Dr. Rando was under the impression that her deposition was only to last three hours. Nevertheless, JLG chose to end the deposition early, after only about an hour of testimony, even though Dr. Rando was available for two more hours. It is unclear whether JLG terminated the deposition because it did not have the information it sought, or because of the time constraints, or both. Either way, JLG's counsel traveled to the deposition knowing that it did not have some of the underlying test data, and once there, chose not to take full advantage of the time she did have with Dr. Rando.

The issue of the box of documents that Dr. Rando brought to her deposition appears to be a red herring. Dr. Rando states that the box of documents included general reference books and materials that she brings as a matter of custom and practice to depositions. She says she did not use those materials to prepare her reports but brought them to her deposition in case she needed to refer to them. Plaintiff's Response [ECF No. 184], at 11. Dr. Rando informed JLG that she did not review or rely on any documents in the box as a basis for her opinions in this case. *Id.* Nevertheless, Dr. Rando agreed to let JLG copy the materials except the raw test data. The only new documents that she brought with her to the deposition were handwritten notes that she prepared in the days before the deposition to refresh her recollection and aid her testimony. It is unclear whether JLG asked for those notes to be produced, whether they are being withheld or are being produced, and whether those notes are required to be produced.

JLG relies heavily on two cases in its written papers, citing them frequently for the proposition that an expert must produce materials considered when formulating her opinion and

that a psychological expert cannot withhold raw data and test protocols from a defendant in a case in which she provides an expert opinion based on test administered to a plaintiff. *Yow v. Cottrell, supra,* and *Chiperas v. Rubin, supra.* In neither case, did the court bar the expert from testifying and neither case stands for the proposition that this Court should bar Dr. Rando from testifying in this case. In each case, the court concluded that the record did not support the defendant's claim that the plaintiff's expert was withholding information that was required to be disclosed under Rule 26(a)(2)(B). In *Chiperas*, the court dealt briefly with a psychological expert's contention that she could not produce certain raw data or test protocols to someone not qualified to review that information, but the court also determined that the expert was not refusing to disclose that material to the other side's qualified expert. That appears to be the situation here as well.

Simply put, there is nothing in this record that establishes that Dr. Rando is refusing to produce anything she is required to produce under the Federal Rules. JLG's counsel's pique about the length of time it has taken to nail down Dr. Rando's deposition and the production of materials required to be produced by the Federal Rules is not a reason for the Court to impose the drastic sanction of barring Dr. Rando from testifying in this case.

Dr. Rando apparently is under the impression that she cannot produce certain materials to JLG without a confidentiality agreement because the material is confidential to the testing company she utilized. It is unclear whether JLG now is refusing to enter into a confidentiality agreement to obtain that information, an agreement it earlier seems to have been willing to enter with Dr. Rando, or whether such an agreement is necessary for Dr. Rando to produce the information to JLG's expert directly. In any event, on this record, it is not clear that Dr. Rando will not produce the raw data and testing protocols she considered in reaching her opinions and that JLG has requested be produced to it or to its expert. For the reasons discussed above, in the

11

Court's view, JLG pulled the plug on the process before that issue was run to ground. That means, among other things, that JLG's Motion is premature at best, and without any basis at all at worst.

The bottom line is that JLG is entitled to depose Plaintiff's expert, Dr. Rando. It is entitled to receive prior to that deposition all the material required to be disclosed under Rule 26(a)(2)(B). The Court cannot conclude on this record that Plaintiff or Dr. Rando are refusing to produce anything they are required to produce under Rule 26(a)(2)(B). If they are refusing to do so, then JLG needs to establish that fact as a predicate for the extreme sanction of precluding Dr. Rando from testifying in this case and present it to the Court on an unambiguous record. All things considered, the better practice may be for JLG to take Dr. Rando's deposition and discover what she has to say; what, if anything, has not been produced; why it has not been produced; whether Dr. Rando considered that material in arriving at her opinions; and whether that material is subject to production under Rule 26(a)(2)(B).

Accordingly, for all these reasons, the Court denies JLG's Motion to Preclude [ECF No. 159] but without prejudice. The Court has no reason to believe that Dr. Rando will not produce the materials she considered in arriving at her opinions in accordance with the Federal Rules. If that is the case, however, then JLG can renew its Motion. Similarly, if a confidentiality agreement or order really is necessary under these circumstances and the parties cannot agree on one, JLG can bring that issue back to the Court.

Dr. Rando's deposition shall be scheduled so that the deposition is completed in one session. Given the circumstances of her first truncated deposition, JLG is entitled to the full seven hours for that reconvened deposition. By December 10, 2018, Plaintiff's counsel shall send counsel for JLG a proposed confidentiality agreement or order that Dr. Rando is willing to sign to facilitate the disclosure of the test data at issue. No later than seven (7) days after that

confidentiality agreement or order is signed or entered (or seven (7) days after the parties determine that no confidentiality agreement or order is necessary), Dr. Rando shall produce the outstanding test data at issue to JLG or to JLG's retained expert psychologist. The time to complete Dr. Rando's deposition is extended to January 31, 2019, and the deadline for disclosure of rebuttal experts on the issue of psychological damages is extended to March 1, 2019. This case is set for a status hearing on December 19, 2018, at 11:00 a.m. for a report on the status of the parties' discussions preliminary to and the scheduling of Dr. Rando's resumed deposition.

Finally, based on this record, the Court declines to award either party his or its costs and attorneys' fees incurred as a result of this dispute. In the Court's view, this was an unnecessary fight that the parties could and should have avoided. Federal Rule 37 permits the Court to impose sanctions—including the reasonable expenses and attorneys' fees incurred by any party—on any person who impedes, delays, or frustrates the fair examination of the deponent. FED. R. CIV. P. 30(d)(2). It appears to the Court that both parties contributed to the dispute at issue here, and neither is entitled to recover its fees or expenses.

## CONCLUSION

For the reasons set forth herein, the Court denies without prejudice JLG's Motion to Preclude [ECF No. 159] and declines to order either side to pay any attorneys' fees or costs incurred by the opposing party.

It is so ordered.

_____
Magistrate Judge Jeffrey T. Gilbert

Dated: December 3, 2018