**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK R. WILDA, individually, and as independent administrator of the ESTATE OF PATRICK C. WILDA, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 16-cv-10088 |
| v. | ) ) | Hon. Steven C. Seeger |
| JLG INDUSTRIES, INC., | ) ) | |
| Defendant. | ) ) | |
| JLG INDUSTRIES, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| ILLINI HI-REACH, INC., | ) ) | |
| Third-Party Defendant. | ) ) | |
| ILLINI HI-REACH, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| AREA ERECTORS, INC., | ) ) | |
| Third-Party Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant JLG Industries, Inc. moved to exclude supplemental expert disclosures dated

April 16, 2020 and April 28, 2020, tendered by one of Plaintiff's experts, Anthony Bond. *See*

JLG Mtn. (Dckt. No. 340). The motion is granted. Separately, Plaintiff Patrick R. Wilda filed a

motion for leave to file a (third) supplemental Bond report dated January 13, 2021. *See* Pl.'s Mtn. (Dckt. No. 379). That motion is denied.

## Background

This case involves a fatal accident involving a construction worker, Patrick C. Wilda, who passed away when using a manlift manufactured by Defendant JLG Industries, Inc. The Court assumes familiarity with its prior opinions, including the recent opinion addressing two *Daubert* motions about Plaintiff's experts (including Bond, the expert at issue here). *See* 1/28/21 Mem. Opin. and Order (Dckt. No. 383).

The parties received plenty of runway before the due date for expert reports. In late 2016, the parties filed the Initial Status Report and proposed a schedule for expert disclosures. The parties agreed that Plaintiff would serve its expert disclosures by February 15, 2018. *See* Initial Status Report, at 3 (Dckt. No. 14). Judge Lee (this Court's predecessor, before reassignment) adopted the parties' proposal, setting a deadline of February 15, 2018 for Plaintiff's expert disclosures. *See* 9/28/17 Order (Dckt. No. 63).

Judge Lee later extended the schedule for expert disclosures, setting a new deadline of July 31, 2018. *See* 4/18/18 Order (Dckt. No. 95); *see also* 7/11/18 Order (Dckt. No. 108). So, under the Federal Rules, that deadline triggered a duty to disclose "all opinions." *See* Fed. R. Civ. P. 26(a)(2)(B)(i).

On July 26, 2018, Plaintiff Wilda served the report of Anthony Bond. *See* 7/26/18 Bond Report (Dckt. No. 341-2). Bond offered four conclusions (some of which blur together). *Id.* at 20 (Dckt. No. 341-2, at 21 of 53). First, Wilda was entrapped against a roof structure, causing his death. Second, the manufacturer (JLG) had the responsibility to design the boom lift in compliance with industry safety standards. Third, JLG failed to eliminate the entrapment

(crushing) hazard associated with the manlift. According to Bond, JLG could have prevented the accident by designing a different platform control station for the boom lift, or by installing the SkyGuard safety device. Fourth, JLG failed to design the boom lift "in accordance with industry standards and guideline[s] to eliminate entrapment (crushing) hazards associated with sustained involuntary operation of the platform controls." *Id.*

But 21 months later, Plaintiff unveiled supplemental expert disclosures. On April 15, 2020, Plaintiff served a four-page supplemental report for Bond. On page one, Bond explained that he was "asked to continue our analysis of causative factors associated" with the accident. *See* 4/15/20 Bond Supp. Report, at 1 (Dckt. No. 341-1, at 4 of 19). He addressed a new industry standard, ANSI A92.20, adopted by the American National Standards Institute. And for the first time, he opined about the history of accidents involving JLG manlifts.

About two weeks later, on April 27, 2020, Plaintiff served a second, corrected supplemental expert report for Bond. *See* 4/27/20 Bond Supp. Report (Dckt. No. 341-5). The difference was small. Basically, the first supplemental report claimed that an industry standard (ANSI A92.20) "became effective in December 2019," but the second supplemental report changed it to June 2020. *See* 4/15/20 Bond Supp. Report, at 2 (Dckt. No. 341-1, at 5 of 19); 4/27/20 Bond Supp. Report, at 2 (Dckt. No. 341-5, at 5 of 19). So, for purposes of this ruling, the Court will treat the first and second supplemental reports as one.[1]

---

[1] As an aside, the supplemental report was the second time that Plaintiff attempted to supplement its expert disclosures. On September 25, 2018, Plaintiff moved for leave to supplement the report of Steven Wiker, based on the notion that JLG had recently produced training materials. *See* Dckt. No. 239. Judge Gilbert later denied that motion. *See* 11/14/19 Order (Dckt. No. 282). Judge Gilbert concluded that the supplementation was untimely, and that the new opinions had little to do with the newly produced material. *Id.*

Nine months later, in January 2021, Plaintiff moved for leave to file yet another supplemental report for Bond (in effect, a third supplemental report). *See* Pl.'s Mtn. (Dckt. No. 379). He wanted to opine about two more accidents.

## Analysis

The Federal Rules require experts to disclose their opinions well in advance of trial. A party must disclose all expert witnesses, and the disclosure "must be accompanied by a written report." *See* Fed. R. Civ. P. 26(a)(2)(B). The report "must contain" several key disclosures. *Id.* First and foremost, the report must include a "complete statement of all opinions the witness will express and the basis and reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Not "may," "must." *Id.* Not "some opinions" or "most opinions," "all opinions." *Id.*

The Federal Rules allow – actually, require – supplementation in certain circumstances. A party must supplement Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *See* Fed. R. Civ. P. 26(e)(1)(A). Expert disclosures are no exception. Rule 26(e)(1) refers to a "disclosure under Rule 26(a)," and expert disclosures fall under Rule 26(a)(2). *Id.*

But the duty to supplement is not a back-door way to ignore Court deadlines for expert disclosures. And the duty to supplement is not an opening to inject new opinions into a case that a party should have disclosed earlier. Rule 26(e)(1)(A) is not an invitation to keep dreaming up new expert opinions.

Supplementing old (meaning timely) opinions with newly obtained information is acceptable. Offering entirely new opinions is not, absent some good reason. Changing a

scheduling order for expert disclosures requires a showing of good cause. *See* Fed. R. Civ. P. 16(b)(4). The Federal Rules require a specific remedy if a party fails to disclose expert opinions in a timely manner. If a party "fails to provide information . . . as required by Rule 26(a) or (e)," that party "is not allowed to use that information . . . unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1).

Plaintiff has come forward with three supplemental expert reports for Bond. For ease of reference, the Court will address the first and second supplemental reports (together), and then the third supplemental report. They share a common thread – they offer new opinions, without much support. Plaintiff has failed to show that the belated disclosures were substantially justified or harmless, so the new opinions don't belong in the case.

## I.    The April 2020 Supplemental Reports

The two supplemental reports from April 2020 (which, again, the Court will treat as one) largely address ANSI A92.20, an industry standard that apparently went into effect in mid-2020. The standard is entitled *Design, Calculations, Safety Requirements and Test Methods for Mobile Elevating Work Platforms (MEWPs)*. *See* 4/27/20 Bond Supp. Report, at 2 (Dckt. No. 341-5, at 5 of 19). The standard has to do with the placement and design of controls. For example, the standard says that "[a]ll controls shall be designed to protect against inadvertent operation." *Id.*

After quoting key language from that industry standard, Bond offered supplemental opinions in three paragraphs. For ease of reference, the Court will address the supplemental opinions one paragraph at a time.

### *Paragraph 1*

In the first paragraph, Bond summarized the development of industry standards in this area, which date "as far back as the late 1940s." *See* 4/27/20 Bond Supp. Report, at 3 (Dckt. No.

341-5, at 6 of 19). The ANSI subcommittee started developing the ANSI A92.20 standard – meaning the standard eventually adopted in mid-2020 – "in 2011, four years prior to the JLG incident involving Mr. Wilda." *Id.* The Court assumes that Bond knew all about it when he issued his report in July 2018. After all, his list of "Professional Memberships" refers to "Scaffold Industry Association (SIA)" and "ANSI/SIA 92.20 Design of Aerial Devices." *See* 7/26/18 Bond Report (Dckt. No. 341-2, at 47 of 53).

Bond points out that Brent Hoover, JLG's director of product safety and reliability since 2013, was the chairman of the ANSI subcommittee. *See* 4/27/20 Bond Supp. Report, at 3 (Dckt. No. 341-5, at 6 of 19). So, in Bond's view, JLG "knew or should have known that ANSI A92.20" required certain design parameters. *Id.*

The first paragraph then offers the blunt opinion that "JLG's design for the involved boom lift did not comply with the ANSI A92.20 standard." *Id.* Bond offered no support and provided no explanation. The introductory paragraph touts that he was offering opinions "to a reasonable degree of engineering certainty." *Id.* But when the time came, an engineering analysis in the supplemental report was nowhere to be found.

The (lengthy) first paragraph then diverted to a discussion of the design for manlifts manufactured by the Elliott Equipment Company, a competitor. *Id.* According to Bond, Elliott's designs "*did* comply with the ANSI A92.20 standard as far back as the early 1990's." *Id.* (emphasis added). And Bond should know – he personally "was involved in this design safety feature throughout the Elliott Equipment Company product lines." *Id.*

There appears to be little justification for adding any of the new opinions at this late stage. The history of the industry standards isn't new – it's *history*. Bond was free to opine about the development of industry standards when he prepared his original report in 2018.

6

It's true that ANSI A92.20 was not adopted until mid-2020. So, in that sense, the adoption of the rule is new. But the drafting of the rule did not come out of nowhere. In fact, as Bond concedes, the proposed change was in the works as early as 2011. Presumably Bond knew in 2018 that ANSI was considering the adoption of a new rule. If the then-emerging rule was important, Bond could have addressed it (even in draft form) in his original report.[2]

In any event, Bond's opinion about Hoover (again, JLG's director of product safety and reliability) would not meaningfully advance the ball. Plaintiff doesn't need an expert to opine about what Hoover knew. That's what cross examination is for. What Hoover "should have known," without more, is not a proper topic of an expert opinion, either. It is not an expert opinion, based on a reliable methodology, supported with reasons. It's just a bare opinion.

In a similar vein, Bond offered no support for the notion that the manlift did not comply with ANSI A92.20. But Rule 26 requires more than a complete statement of opinions. An expert must offer the "basis and reasons for them," too. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). A supplemental, conclusory, one-sentence-long opinion doesn't cut it. So, even if the opinion were on time, it would not get anywhere.

The passage about equipment manufactured by the Elliott Equipment Company comes too late in the game, too. Bond worked there, and he was involved in safety designs. So the new opinion does not rely on new information. He knew his work history when he issued his report in 2018. That passage of the supplemental report is a new opinion about old facts.

Plaintiff thinks that the opinion is fair game because Bond's original report included photographs of the Elliott Equipment machinery in the list of materials reviewed. *See* 7/26/18

---

[2] The Court reserves judgment on whether changes to industry standards after the accident are admissible. The Court previously inquired why industry standards adopted in 2020 have any bearing on an accident that took place in 2015. *See* 12/8/20 Order (Dckt. No. 373).

Bond Report (Dckt. No. 341-2, at 36 of 53). That argument cuts the other way. Bond knew what Elliott Equipment's machines looked like, but he said nothing about them when he had the chance in his original report. He saw the photos, but offered no opinions.

Finally, Plaintiff argues that the machines from Elliott Equipment came up at Bond's deposition. Maybe so, but it makes no difference. Rule 26(a)(2) provides that a party "must" disclose expert opinions in a "*written* report." *See* Fed. R. Civ. P. 26(a)(2) (emphasis added). An expert cannot disclose new opinions and expand his or her report by blurting out new material in a deposition. Allowing an expert to offer new opinions at deposition would create chaos, inject uncertainty, invite sandbagging, and undermine the whole point of disclosure requirements mandated by the Federal Rules. Experts need to be pinned down, in writing. Expert opinions are not supposed to be a moving target.

### *Paragraph 2*

In the second paragraph, Bond opined about JLG's awareness of other accidents. "JLG had been aware of the entrapment hazard associated [with] sustained involuntary operation of their equipment through OSHA inspections and court cases of aerial device incidents involving their equipment." *See* 4/27/20 Bond Supp. Report, at 3 (Dckt. No. 341-5, at 6 of 19). According to Bond, "OSHA and court cases indicated at least 35 incidents" involving JLG's equipment and entrapment hazards. *Id.* Bond relied upon information that "JLG recently provided in their supplemental discovery answers." *Id.*

At first blush, this paragraph might seem to be a good candidate for a supplemental expert opinion. After all, Bond purported to rely on supplemental discovery responses, meaning discovery produced *after* he issued his report.

But there are a few problems.  For starters, Bond does not appear to have opined about the history of accidents with JLG manlifts in his original report.  The history of accidents was not entirely unknown, either.  JLG disclosed at least some information about the history of accidents in its discovery responses in April 2017, over a year before Bond issued his report in July 2018.  *See* JLG's Supp. Resp. to Pl.'s Interrogatories, at 5–7 (Dckt. No. 341-8); JLG's Second Supp. Resp. to Pl.'s Interrogatories, at 2–5 (Dckt. No. 341-9).

Specifically, on April 17, 2017, JLG produced documents about seven specific cases that involved accidents with JLG manlifts.  *See* JLG Mem. of Law Opposing Pl.'s Mtn. to Compel, at 2 (Dckt. No. 351).  Six months later, Plaintiff deposed a corporate representative of JLG under Rule 30(b)(6).  JLG's witness testified that the company was aware of at least 20 deaths involving entrapment in a JLG boom lift, and possibly the same number of lawsuits.  *See* Forgas Dep., at 23–24, 52 (Dckt. No. 351-2, at 2–4 of 8).

It is unclear what, if anything, Plaintiff did to follow-up on that lead before fact discovery closed in mid-2018.  But in 2020, a year-and-a-half after fact discovery closed, Plaintiff started sending requests to JLG to supplement its discovery responses.  *See* JLG Mem. of Law Opposing Pl.'s Mtn. to Compel, at 4–7 (Dckt. No. 351) (summarizing the correspondence).  Plaintiff apparently learned about other accidents by searching online, including OSHA's website.  In an email dated March 30, 2020, Plaintiff identified 39 other accidents.  *Id.*  JLG ultimately responded that it had already disclosed 10 of those accidents.  *Id.*  For the remaining accidents, JLG had no responsive documents (*e.g.,* the accidents were old) or they involved different equipment.  *Id.*

The recent back-and-forth should not obscure a simple point:  Plaintiff concedes that JLG disclosed information about seven other accidents before Bond issued his first report.  *See* Pl.'s

9

Resp., at 6 (Dckt. No. 358) ("Defendant disclosed seven former accidents in its prior disclosures."). And Bond apparently reviewed those materials before issuing his original report. *See id.* (noting that those seven accidents are "listed in his initial report"); *see also* 7/26/18 Bond Report, at 5–6 (Dckt. No. 341-2) (noting that a JLG executive testified in the *Hazel* case); *id.* at 24, 28 (noting that Bond reviewed information from other cases, including *Hazel*, *Carter*, *Ferrovial*, *Mann*, and *Crabb*).

But Bond offered no opinions about the history of accidents in his original report. He did not analyze other accidents involving JLG manlifts or make any attempt to argue that they were similar to the accident involving Wilda. He offered no opinion that JLG should have learned something from the earlier incidents. At best, he simply acknowledged that he reviewed information about other cases. That is not the same thing as disclosing an opinion.

Overall, the record confirms that Plaintiff may not have known everything about prior accidents when Bond issued his original report. But Plaintiff knew enough to have Bond opine about them, if Plaintiff thought that the topic was important. And if Plaintiff needed more information for his expert, Plaintiff could have followed up.

Maybe Plaintiff could argue that the history of accidents was not significant when Bond issued his report in July 2018, but the history *became* significant when JLG provided additional information after the fact. But Plaintiff makes no such argument, and gives no such explanation. If the history of accidents was significant, Bond presumably should have addressed the topic in his original report. And if the history was truly important, Plaintiff could have pressed the point and ensured that he received the information that its expert needed before the original due date.

Plaintiff insists that Bond's supplemental opinion about prior accidents "is not new." *See* Pl.'s Resp., at 6 (Dckt. No. 358). In fact, Plaintiff thinks that the new opinion is "duplicative of

opinions stated in his first report." *Id.* at 7. Plaintiff points to statements in the original report that JLG was aware of the hazards of entrapment. *Id.* (citing page 18 of the original Bond report); 7/26/18 Bond Report, at 18 (Dckt. No. 341-2) ("Testimony by JLG personnel indicated that JLG had been aware of the risk for an operator being entrapped against an object since the 1970s.").

That generic passage is not enough. Plaintiff does not point to any statement in Bond's original report that offers an opinion about the history of accidents. The supplemental report does not merely cover "*additional* incidents," meaning accidents above and beyond the accidents addressed in the original report. *See* Pl.'s Resp., at 6 (Dckt. No. 358) (emphasis added). Instead, it addresses the history of accidents for the first time. There's no foothold in the original report about prior accidents, so the new passage is not a mere supplement within the meaning of Rule 26(e)(1)(A).

In a related filing, Plaintiff points to four pages in the original report where Bond allegedly made "arguments concerning prior accidents." *See* Pl.'s Reply to Def. JLG's Mem. of Law, at 6 (Dckt. No. 350) (citing to pages 5, 6, 24, and 28 of the original Bond report). But those four pages do not include any opinions about prior accidents. On pages five and six, Bond simply noted that JLG was aware of entrapment risks since the 1970s, and that JLG's corporate representative testified in another lawsuit. *See* 7/26/18 Bond Report, at 5–6 (Dckt. No. 341-2, at 6–7 of 53). The other two pages are even less meaningful. Bond simply included documents about other lawsuits in his list of materials reviewed. *Id.* at Attachment A (Dckt. No. 341-2, at 24, 28 of 53).

Even then, Bond's supplemental opinion isn't really an opinion. It's a summation of evidence. That is, he merely summarized JLG's "supplemental discovery answers." *See* 4/27/20

Bond Supp. Report, at 3 (Dckt. No. 341-5, at 6 of 19). But Plaintiff doesn't need an expert to summarize JLG's discovery responses. Plaintiff could offer them into evidence and use them during cross examination. Bond isn't adding any value by repeating what the discovery responses already say.

Finally, exploring 35 other accidents in expert discovery at this late stage would be no small voyage. It would be expensive and time consuming, and would create unnecessary delays in a case that has already consumed years of litigation. By way of comparison, in their Initial Status Report in November 2016, the parties proposed a deadline for expert disclosures of February 15, 2018. *See* Initial Status Report, at 3 (Dckt. No. 14). Almost three years ago.

### *Paragraph 3*

The final paragraph is only three sentences long. *See* 4/27/20 Bond Supp. Report, at 3–4 (Dckt. No. 341-5, at 6–7 of 19). Bond opined that those 35 accidents are "substantially similar to the incident involving Mr. Wilda." *Id.* With no explanation. Then, Bond added that the "platform control stations for these accidents are substantially similar to the platform control station for the involved boom lift." *Id.* Again, with no explanation. In the last sentence, Bond opined that SkyGuard (the optional safety device, as discussed in this Court's recent summary judgment ruling) "was designed to prevent the deaths that occurred" in those accidents. *Id.* With nothing else.

Again, those morsels are not enough to constitute opinions, backed by a reliable methodology and supported by specific reasons. They're just statements, buttressed by nothing, hanging in mid-air.

II.     **The January 2021 Supplemental Report**

A few weeks ago, Plaintiff moved for leave to file an additional supplemental report for

Bond.  *See* Pl.'s Mtn. (Dckt. No. 379).  Plaintiff basically wants to amend the Bond report to

address two additional accidents.  According to Bond, the two accidents are "substantially

similar to the incident involving Mr. Wilda."  *See* 1/13/21 Bond Report, at 1 (Dckt. No. 380-1, at

2 of 7).

The analysis is largely the same.  Bond did not opine about prior accidents in his original

report, even though he knew that JLG manlifts were involved in other accidents.  So there is no

foundation in the original report to support the supplemental opinion.  It's not a supplement to

the original report.  It doesn't build on anything else.  It's new construction.

Even then, the new opinion is cursory, to put it mildly.  The supplemental report never

explains why the other cases are "substantially similar" to the Wilda accident.  The opinion is

one sentence long, unadorned with support.  He attached incident summaries for the two other

accidents, but they span only a paragraph each.  *See* 1/13/21 Bond Report (Dckt. Nos. 380-1,

380-2).  It's too little, too late.

## Conclusion

JLG's motion to exclude new expert disclosures (Dckt. No. 340) is hereby granted.

Plaintiff's motion for leave to file a supplemental Bond report (Dckt. No. 379) is hereby denied.


Date:   February 10, 2021                       _____
                                                Steven C. Seeger
                                                United States District Judge

13