**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK R. WILDA, individually, and as independent administrator of the ESTATE OF PATRICK C. WILDA, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 16-cv-10088 |
| v. | ) ) | Hon. Steven C. Seeger |
| JLG INDUSTRIES, INC., | ) ) ) | |
| Defendant. | ) | |
| —————————————————— | ) | |
| JLG INDUSTRIES, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| ILLINI HI-REACH, INC., | ) ) | |
| Third-Party Defendant. | ) ) | |
| —————————————————— | ) | |
| ILLINI HI-REACH, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| AREA ERECTORS, INC., | ) ) | |
| Third-Party Defendant. | ) ) | |
| —————————————————— | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is about a fatal injury suffered while a construction worker was using a manlift.

The estate sued the manufacturer of the manlift, JLG Industries. JLG, in turn, sued the

distributor, Illini Hi-Reach, for indemnification. And Illini Hi-Reach sued the employer, Area

Erectors, for indemnification.  The thrust of the case is about how to allocate responsibility for the fatal accident between the manufacturer, the distributor, and the employer.

Years of discovery followed.  This Court ultimately ruled on a collection of summary judgment motions.  For present purposes, the most important ruling involved the claims by JLG (again, the manufacturer) against Illini Hi-Reach (again, the distributor).  The Court ruled that Illini Hi-Reach had an obligation to indemnify JLG under the terms of their contract.

After this Court ruled on the motions for summary judgment, the estate and JLG participated in a mediation.  They reached a settlement.  That settlement potentially has big implications for Illini Hi-Reach.  At the summary judgment stage, this Court ruled that Illini Hi-Reach must indemnify JLG, so an agreement between the estate and JLG is ultimately about the size of the bill that Illini Hi-Reach must foot.

The estate and JLG now seek a ruling that the settlement was in good faith within the meaning of the Illinois Joint Tortfeasor Contribution Act.  *See* JLG's Mtn. (Dckt. No. 417); Wilda's Mtn. (Dckt. No. 419).  And JLG also moves for severance of the third-party action and the entry of judgment against Illini Hi-Reach under Rule 58(b).  *See* JLG's Mtn. to Sever and Enter Judgment (Dckt. No. 418).  Illini Hi-Reach opposes all three motions.

For the reasons stated below, the motions are denied.

## Background

To streamline this Opinion, the Court will assume familiarity with the background of the case, as explained in its prior rulings.  *See* 7/2/20 Opin. (Dckt. No. 366); 2/3/21 Opin. (Dckt. No. 384); 2/10/21 Opin. (Dckt. No. 385).  The Court will simply cover the essentials.

The case involves a tragic accident involving a construction worker.  Patrick C. Wilda was helping to build a warehouse in the southern part of the Chicagoland area.  The accident

happened while Wilda was on a manlift manufactured by JLG. A manlift is a "self-propelled hydraulic personnel lift equipped with a work platform on the end of an elevating and rotating boom." *See* JLG Operation and Safety Manual, at § 4.1 (Dckt. No. 288-7). It is a scaffold at the end of an articulating boom, on wheels. *See* Bond Report, at 12, 15 (Dckt. No. 419-1, at 20, 23 of 175) (showing pictures of a manlift). Somehow, Wilda became trapped between the manlift and one of the ceiling beams, and asphyxiated.

JLG manufactured the manlift and delivered it to Illini Hi-Reach, one of its distributors. Illini Hi-Reach, in turn, rented the manlift to Area Erectors, a construction company, to use at the jobsite. Illini Hi-Reach also had a JLG safety guard for the manlift, called SkyGuard, available as optional equipment. But Illini Hi-Reach didn't install the guard on the manlift that it rented to Area Erectors.

The estate filed suit against JLG (the manufacturer). JLG later sued Illini Hi-Reach (the distributor). And Illini Hi-Reach, in turn, sued Area Erectors (the employer).

After years of litigation, the parties filed a flurry of summary judgment motions. This Court granted JLG's motion for summary judgment on its indemnification claim against Illini Hi-Reach. *See* 7/2/20 Opin. (Dckt. No. 366). So Illini Hi-Reach has a duty to indemnify JLG.

Illini Hi-Reach and Area Erectors later stipulated to dismissal of Illini Hi-Reach's claims against Area Erectors under Rule 41(a)(1)(A)(ii) without prejudice. *See* 5/12/21 Order (Dckt. No. 404). At that point, Illini Hi-Reach remained as a party, but only as an indemnitor to JLG.

After ruling on the summary judgment motions, this Court set the case for trial on the estate's claims against JLG. Two months before trial, the estate and JLG participated in a mediation, which culminated in a settlement agreement. *See* Joint Statement Regarding

Settlement (Dckt. No. 411). They settled for $6,250,000. *See* Settlement Agreement, at § 3 (Dckt. No. 417-1). Illini Hi-Reach participated in the mediation.

The estate and JLG then filed motions asking this Court to make a finding that the settlement was made in good faith within the meaning of the Illinois Joint Tortfeasor Contribution Act. *See* JLG's Mtn. (Dckt. No. 417); Wilda's Mtn. (Dckt. No. 419). And JLG also moves to sever the third-party action and enter judgment against Illini Hi-Reach under Rule 58(b). *See* JLG's Mtn. to Sever and Enter Judgment (Dckt. No. 418).

**Discussion**

## I.     The Illinois Joint Tortfeasor Contribution Act

The estate and JLG ask this Court for a finding that they reached their settlement in good faith under the Illinois Joint Tortfeasor Contribution Act. *See* JLG's Mtn. (Dckt. No. 417); Wilda's Mtn. (Dckt. No. 419). That request suffers from a basic problem: there's no contribution claim in the case.

At common law, a tortfeasor did not have a right of contribution against another tortfeasor, even though they shared responsibility for the same injury to the same victim. *See Nw. Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77, 86–88 (1981). A plaintiff could sue and collect full damages from one tortfeasor, and that tortfeasor could not recover anything from a second tortfeasor. *See* William M. Landes & Richard A. Posner, The Economic Structure of Tort Law, 191 (1987); *see also* W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts, § 50 (5th ed. 1984). So one tortfeasor could be left holding the bag, and another could get off scot-free. That's over-payment and under-deterrence.

The Contribution Act makes sure that joint tortfeasors pay their fair share, so that there is an equitable distribution of tort liability. The Act creates a statutory "right of contribution" when

4

"2 or more persons are subject to liability in tort arising out of the same injury." *See* 740 ILCS 100/2(a). A "tortfeasor who has paid more than his pro rata share of the common liability" can bring a claim against another tortfeasor. *See* 740 ILCS 100/2(b); *see also Koh v. Village of Northbrook*, 2020 WL 6681352, at *5 (N.D. Ill. 2020) ("[T]he Act gives the unfairly burdened tortfeasor the right to sue the others for contribution.").

The statute places a cap on the amount that one tortfeasor can recover from another. A tortfeasor who paid more than its fair share can recover the amount of the overpayment from another tortfeasor. That is, "his total recovery is limited to the amount paid by him in excess of his pro rata share." *Id.* So a tortfeasor can compel another tortfeasor to pay its fair share of the bill – and nothing else.

The Act also covers how to handle settlements with the injured party. When a tortfeasor settles with the plaintiff, it "does not discharge any of the other tortfeasors from liability," unless the settlement agreement says so. *See* 740 ILCS 100/2(c). But it does "reduce[] the recovery on any claim against the others" by the injured party (and thus prevents a windfall). *Id.*

A tortfeasor who settles with the injured party in good faith has no duty to pay contribution to another tortfeasor. "The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." *See* 740 ILCS 100/2(d). A settlement "pursuant to paragraph (c)" means a settlement "in good faith." *See* 740 ILCS 100/2(c). "Put another way, the Act extinguishes the right of contribution if the tortfeasor and the plaintiff have entered into a good-faith settlement." *See Koh*, 2020 WL 6681352, at *5.

That provision encourages settlement. It allows a tortfeasor to settle with an injury party, without looking over his or her shoulder, wondering when another tortfeasor will show up with

5

the rest of the tab. *Id.* at *4 ("A tortfeasor considering whether to settle a case would think twice about doing that if the tortfeasor remains vulnerable to a contribution suit from a co-defendant."). One of the primary benefits of settlement is finality, so the Act ensures that tortfeasors know what they're getting when they settle claims. *See Johnson v. United Airlines*, 203 Ill. 2d 121, 271 Ill. Dec. 258, 784 N.E.2d 812, 821 (2003) ("[T]he Contribution Act seeks to promote two important public policies – the encouragement of settlements and the equitable apportionment of damages among tortfeasors.").

But the Act also discourages settlements that are not made in good faith. So, for example, imagine if a defendant settled a toxic tort case for $1, and saddled the other defendants with the rest of an enormous liability. A court might find that the settlement was not in good faith, and thus preserve the ability of the other tortfeasors to bring a claim for contribution down the road. *See, e.g.*, *Mercola v. Abdou*, 223 F. Supp. 3d 720, 731–33 (N.D. Ill. 2016) (holding that a settlement for $25,000 was not in good faith).

A tortfeasor who settles with the injured party also loses the ability to bring a contribution claim against a non-settling tortfeasor. "A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." *See* 740 ILCS 100/2(e). A settling tortfeasor is responsible for the settlement, and cannot pass the hat around to tortfeasors who do not benefit from the settlement.

So, when it comes to joint tortfeasors, the statute covers both offense and defense. A tortfeasor can bring a claim (*i.e.*, offense) against another tortfeasor for contribution, to make sure that everyone pays their fair share. And on the flipside, a tortfeasor has no obligation to pay (*i.e.*, defense) another tortfeasor when the first tortfeasor settles in good faith with the injured

party. Sometimes the Act is about bringing a claim, and sometimes the Act is about defending against a claim.

Courts in this district have, at appropriate times, entered findings about whether a settlement was in good faith within the meaning of the Illinois Joint Tortfeasor Contribution Act. *See, e.g.*, *Koh*, 2020 WL 6681352, at *5 (Chang, J.); *Castaneda v. Heinrich*, 2020 WL 5542844, at *3 (N.D. Ill. 2020) (Ellis, J.); *Bulson v. Helmold*, 2018 WL 5729752, at *2 (N.D. Ill. 2018) (Kapala, J.); *Mercola*, 223 F. Supp. 3d at 731–33 (Feinerman, J.).

But the statute is an awkward fit, at best, in the case at hand (as it currently stands, anyway). The Act contemplates a claim for contribution by one tortfeasor against another. But JLG is not bringing a contribution claim against Illini Hi-Reach. That is, JLG is not claiming that it has a statutory right to recover from Illini Hi-Reach some or all of its settlement with the estate. And on the flipside, Illini Hi-Reach is not bringing a contribution claim against JLG, either.

The Contribution Act covers contribution claims, but there is no live contribution claim in this case. There *was* a contribution claim at one point. JLG brought a contribution claim against Illini Hi-Reach "as an alternate remedy," meaning as an alternative to its indemnification claim. *See* JLG's Am. S.J. Brf., at 16 (Dckt. No. 317). But JLG agreed to drop the contribution claim if this Court ruled in its favor on the indemnification claim (which this Court later did). *See* JLG's Am. S.J. Brf., at 16–17 (Dckt. No. 317) ("If JLG is awarded contractual indemnification against Illini for all claims in this lawsuit, then JLG has no objection to this Court dismissing its contribution claim."); 7/2/20 Opin., at 22 (Dckt. No. 366); *see also Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 290 Ill. Dec. 218, 821 N.E.2d 269, 276 (Ill. 2004)

("The remedies of contribution and indemnity are mutually exclusive, and contribution is prohibited where a party has a right to indemnity.").

JLG did bring an *indemnification* claim against Illini Hi-Reach, meaning a claim that the distributor has a contractual obligation to indemnify JLG for any liability. But indemnification and contribution are not the same thing.

Contribution is a statutory right to recover an equitable portion of tort liability from another tortfeasor. "A right of contribution is the right of a joint and several tortfeasor to bring a distinct cause of action against a fellow defendant to apportion the cost of damages . . . ." *See Fox v. Barnes*, 2013 WL 2111816, at *3 (N.D. Ill. 2013). Indemnification, in contrast, is a creature of contract. Indemnification involves an agreement to shift responsibility for a liability from one party to another. *See* W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts, § 51 (5th ed. 1984).

The motions at hand have an advisory flavor to them. The estate and JLG seek a ruling that they entered into a settlement in good faith under the Contribution Act, even though there is no contribution claim in the case. JLG is not bringing a contribution claim against Illini Hi-Reach, and Illini Hi-Reach is not bringing a contribution claim against JLG. No tortfeasor is seeking contribution from any other tortfeasor.

Adding to the mystery, the estate and JLG aren't on the same page about whether the Contribution Act applies to their settlement. The estate "agrees [with Illini Hi-Reach] that this case is *not* subject to the Contribution Act." *See* Pl.'s Reply, at 11 (Dckt. No. 431) (emphasis added). However, the estate thinks that this Court should look to the statute as a measuring stick, and use the framework under the Contribution Act when evaluating the reasonableness of the proposed settlement given the existence of an indemnitor. *Id.* JLG, for its part, argues that the

8

Contribution Act applies because Illini Hi-Reach had potential liability to the estate, and thus there was a *potential* for contribution. *See* JLG's Reply, at 1–3 (Dckt. No. 432). Like the estate, JLG believes that this Court should use the standards under the Contribution Act when deciding whether the settlement is reasonable. *Id.* at 3.

To support the notion that the Act applies, JLG points out that the Act covers potential tort liability, not merely actual tort liability. *See, e.g.*, JLG Brf., at 2–3 (Dckt. No. 437). It is true that the Act covers potential tort liability, measured at the time of the injury to the plaintiff. *See Doyle v. Rhodes*, 101 Ill. 2d 1, 77 Ill. Dec. 759, 461 N.E.2d 382, 387 (1984); *Joe & Dan Int'l Corp. v. U.S. Fid. & Guar. Co.*, 178 Ill. App. 3d 741, 127 Ill. Dec. 830, 533 N.E.2d 912, 918 (1988); *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 783 (7th Cir. 2008). For example, an injured party could sue a joint tortfeasor, and that tortfeasor could bring a contribution claim against a second tortfeasor. The fact that victim has not sued the second tortfeasor would not bar a contribution claim by the first tortfeasor against the second tortfeasor.

A tortfeasor can bring a contribution claim against another tortfeasor, even though actual liability to the victim is up in the air. But that's different than saying that a tortfeasor can get a declaration about contribution, even if there is no contribution claim.

Truth be told, it doesn't appear that JLG wants *contribution* from Illini Hi-Reach. That is, JLG isn't trying to get Illini Hi-Reach to pay a portion of the settlement *as contribution*. And JLG doesn't seem to want protection from a possible claim by Illini Hi-Reach (or anyone else), meaning a claim by Illini Hi-Reach for contribution against JLG because the settlement was in bad faith.

Instead, what JLG wants is a ruling that the settlement agreement was not fraudulent or collusive, and thus the settlement is enforceable, and thus Illini Hi-Reach has a contractual

obligation to pay the full amount of the bill *as the indemnitor*. They're taking a statute from Contribution Land, and applying it to Indemnification Land.

For that reason, the Court declines the invitation to make a preemptive finding that the settlement was reached in good faith within the meaning of the Act. The Contribution Act governs contribution claims, but there is no contribution claim in the case. Applying contribution standards to an indemnification agreement does not make much sense, especially when the Court can (and shortly will) apply case law about indemnification.[1]

## II.  The Reasonableness of the Settlement

The inapplicability of the statute does not resolve the motions. The estate and JLG ask this Court to enter judgment against Illini Hi-Reach, given that the estate and JLG settled, and given that Illini Hi-Reach has a duty to indemnify JLG. That request requires the Court to take a look at the settlement agreement, and decide whether to enter judgment and require Illini Hi-Reach to pay the settlement amount.

Taking a step back, the estate settled with JLG, and as this Court previously ruled, JLG has a right to indemnification from Illini Hi-Reach. This Court has not yet entered judgment on

---

[1]  Oftentimes when courts decide whether a settlement is in good faith, there is a pending contribution claim by different tortfeasors. *See, e.g.*, *West v. Office Depot, Inc.*, 2021 WL 5048346, at *1–2 (N.D. Ill. 2021); *Castaneda v. Heinrich*, 2020 WL 5542844, at *1–2 (N.D. Ill. 2020); *Bulson v. Helmold*, 2018 WL 579752, at *1 (N.D. Ill. 2018); *Volkova v. C.H. Robinson Co.*, 2016 WL 11709497, at *1–3 (N.D. Ill. 2016); *Mercola v. Abdou*, 223 F. Supp. 3d 720, 731–33 (N.D. Ill. 2016); *Ashley v. Schneider Nat'l Carriers, Inc.*, 2015 WL 4550126, at *1 (N.D. Ill. 2015); *Motton v. Petrie*, 2015 WL 1510412, at *2–5 (N.D. Ill. 2015); *Rasmusen v. White*, 2012 WL 1658295, at *3–6 (N.D. Ill. 2012); *LaJeunesse v. Ford Motor Co.*, 642 F. Supp. 2d 835, 838–44 (N.D. Ill 2009); *Sachs v. Reef Aquaria Design, Inc.*, 2008 WL 780633, at *3–6 (N.D. Ill. 2008); *Cotton v. PrivateBank & Tr. Co.*, 2003 22220259, at *2–7 (N.D. Ill. 2003). It is not clear to this Court that that is always the case. *See, e.g.*, *Koh v. Village of Northbrook*, 2020 WL 6681352, at *1 (N.D. Ill. 2020); *LM Ins. Corp. v. ACEO, Inc.*, 2013 WL 2588272, at *7–9 (N.D. Ill. 2013); *see also Driscol v. Kins*, 2019 WL 4014089, at *3 (N.D. Ill. 2019) (discussing a state court's finding of a good faith settlement without a pending contribution claim).

JLG's third-party claim against Illini Hi-Reach. When the Court issued its summary judgment ruling, the estate's claim against JLG was pending. At that point, this Court could not pin down the amount owed by Illini Hi-Reach to JLG, because JLG's liability to the estate was up in the air.

But now, the estate has settled with JLG, so there is an amount certain that JLG must pay to the estate. And that, in turn, means that there is an amount certain that Illini Hi-Reach must pay to JLG (subject to judicial review, that is).

JLG argues that the time has now come to enter judgment against Illini Hi-Reach. *See* JLG's Mtn. to Sever and Enter Judgment (Dckt. No. 418). JLG seeks a judgment for the full amount of its settlement with the estate, and requests a ruling that the settlement was reasonable. *Id.* Illini Hi-Reach responds that JLG's settlement with the estate was fraudulent and collusive. *See* Illini Hi-Reach Resp., at 3 (Dckt. No. 424).

Most of the time, courts are not in the business of giving their blessing to the terms of a settlement. Usually, parties are free to cut whatever deal they want, and go about their business. But there are exceptions. Class actions are one. *See* Fed. R. Civ. P. 23(e) (providing that parties may settle class claims "only with the court's approval"). The Fair Labor Standards Act is another. *See* 29 U.S.C. § 206 *et seq.* A third example is a settlement that triggers a duty to pay by a non-settling indemnitor.

Under Illinois law, an indemnitor is liable for the full amount of the indemnitee's settlement with the plaintiff if the settlement is reasonable. *See Westamerica Mtg. Co. v. TriCounty Reports, Inc.*, 670 F. Supp. 819, 821 (N.D. Ill. 1987); *N.E. Finch Co. v. R.C. Mahon Co.*, 54 Ill. App. 3d 573, 12 Ill. Dec. 537, 370 N.E.2d 160, 163 (1977); *Nogacz v. Procter &*

*Gamble Mfg. Co.*, 37 Ill. App. 3d 636, 347 N.E.2d 112, 123 (1975); *St. Paul Fire & Marine Ins. Co. v. Michelin Tire Corp.*, 12 Ill. App. 3d 165, 298 N.E.2d 289, 291 (1973).

A settlement is unreasonable if it is fraudulent or collusive. *See N.E. Finch Co.*, 370 N.E.2d at 163 ("Nor do we think the indemnitor is entitled to question the amount of the settlement absent fraud or collusion between the parties to the settlement.") (citation omitted); *Rogers Cartage Co. v. Travelers Indemnity Co.*, 2018 IL App (5th) 160098, ¶ 78, 422 Ill. Dec. 372, 103 N.E.3d 504 (2018); *Guillen v. Potomac Ins. Co. of Illinois*, 203 Ill. 2d 141, 271 Ill. Dec. 350, 785 N.E.2d 1, 14 (2003).

So before entering judgment, and binding Illini Hi-Reach as an indemnitor, this Court must decide whether the settlement between the estate and JLG was reasonable. The Court looks to two factors.[2]

First, the settlement must be made in reasonable anticipation of personal liability. *See Westamerica Mtg. Co.*, 670 F. Supp. at 821. In other words, an indemnitee's decision to settle must conform to the standard of a prudent *un*-indemnified. *See Guillen*, 785 N.E.2d at 14 ("[T]he litmus test must be whether, considering the totality of the circumstances, the insured's decision conformed to the standard of a prudent uninsured."); *Starr Indemnity & Liability Co. v. Cook County*, 2021 WL 4401902, at *6 (N.D. Ill. 2021) (Dow, J.) (citing *Guillen* in an

---

[2] Courts engage in a similar inquiry when deciding whether parties entered into a settlement in good faith under the Illinois Joint Tortfeasor Contribution Act. Under the Act, courts consider four factors when deciding whether the parties made a good faith settlement: (1) "whether the amount paid by the settling tortfeasor was within the reasonable range of the settlor's fair share"; (2) "whether there was a close personal relationship between the settling parties"; (3) "whether the plaintiff sued the settlor"; and (4) "whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement." *Wreglesworth v. Arctco, Inc.*, 317 Ill. App. 3d 628, 251 Ill. Dec. 363, 740 N.E.2d 444, 449 (2000). The settling parties carry "the initial burden of making a preliminary showing of good faith," which can be proven by "the existence of a legally valid settlement agreement." *Johnson v. United Airlines*, 203 Ill. 2d 121, 271 Ill. Dec. 258, 784 N.E.2d 812, 820 (2003). After that preliminary showing, "the burden shifts to [the non-settling party] to prove the absence of good faith by a preponderance of the evidence." *Piercy v. Whiteside County*, 2016 WL 1719802, at *4 (N.D. Ill. 2016) (citing *Johnson*, 784 N.E.2d at 820).

indemnification case); *Fox v. Admiral Ins. Co.*, 2016 WL 454319, at *13 (N.D. Ill. 2016) (Shah, J.) (same). The question is whether a settlement is reasonable even if the settling party had to pay it, without passing it along to someone else.

Second, the amount of the settlement must be reasonable. *See Westamerica Mtg. Co.*, 670 F. Supp. at 821; *see also Guillen*, 785 N.E.2d at 14 ("[W]ith respect to the amount of damages agreed to, the test is what a reasonably prudent person in the position of the insured would have settled for on the merits of plaintiff's claim.") (cleaned up). That decision "involves a commonsense consideration of the totality of 'facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.'" *Guillen*, 785 N.E.2d at 14.

Evidence of fraud, collusion, or bad faith between the settling parties may make a settlement unreasonable. *See N.E. Finch Co.*, 370 N.E.2d at 163; *Fox*, 2016 WL 454319, at *13. A settlement "becomes collusive when the purpose is to injure the interests of an absent or nonparticipating party." *See Cent. Mut. Ins. Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 80, 385 Ill. Dec. 904, 19 N.E.3d 1100 (2014). "Among the indicators of bad faith and collusion are unreasonableness, misrepresentation, concealment, secretiveness, lack of serious negotiations on damages, attempts to affect the insurance coverage, profit to the insured, and attempts to harm the interest of the insurer. They have in common unfairness to the insurer, which is probably the bottom line in cases in which collusion is found." *Id.*

With these standards in mind, the Court turns to the settlement between the estate and JLG. Based on the record at hand, the Court cannot conclude that the settlement is, in fact, reasonable, for a few reasons.

The most basic problem is the paucity of the submissions from the parties. The estate and JLG have not equipped this Court with the information that it needs to assess whether the

settlement is reasonable. The estate and JLG have told this Court that they settled for $6,250,000, after a mediation. And they filed a copy of the settlement agreement, too. But that's about it.

For starters, this Court does not know the total amount of JLG's potential exposure if the parties had gone to trial instead of settling. How much damages was the estate seeking from JLG, anyway? Did the estate have a damages expert, or pin down its damages in an interrogatory response? How much of a discount did JLG receive on the *ad damnum*? Is the settlement cents on the dollar, or the full dollar? The parties never say. Telling the Court that the estate sought a "significant award of damages" tells the Court nothing. *See* Wilda's Mtn., at 11 (Dckt. No. 419). It is difficult to evaluate a settlement without knowing the full extent of the potential liability.

The parties also do not provide much information about other settlements in the case. The Court does not know the total amount of the estate's potential damages, and how much the estate has recovered from everyone else. Maybe the settlement with JLG is in line with other settlements. Or maybe it is an outlier. If it is an outlier, maybe there are good reasons for the disparity. The Court is left to wonder.

The parties also do not address the estate's likelihood of success on the merits. The estate's brief says that the "amount of a settlement must be viewed in relation to the probability of recovery, [and] the defenses raised." *See* Wilda's Mtn., at 7 (Dckt. No. 419). Knowing the likely outcome would help set the table when evaluating a potential settlement. The likelihood of recovery, plus the amount of a potential recovery, determine the value of the claim.

But the estate does not address that issue at all. Instead, the estate points generically to the summary judgment filings, forcing this Court to ruffle through the docket and figure out for

itself the strengths and weaknesses of the case. *See* Wilda's Mtn., at 2–3 (Dckt. No. 419). The estate then summarizes the evidence about the decedent's suffering during the accident, and the trauma that his family later suffered. *Id.* at 3–6. That suffering is undeniable, but it does not say much about whether JLG is responsible for it.

This Court also does not know anything about JLG's settlement posture before this Court granted its summary judgment motion and held that Illini Hi-Reach must indemnify JLG. How much did JLG think that the estate's claim was worth, when JLG *itself* had to pay it? Is a settlement of $6,250,000 vastly more generous than what JLG would have paid, if the indemnification did not exist? One wonders.

Maybe the biggest omission is the lack of any information about the mediation itself. The parties reveal that they participated in mediation. It lasted one day, and Illini Hi-Reach participated. The parties tell the Court that the settlement was the "product of an arm's-length negotiation at a day long mediation, to which indemnitor Illini Hi-Reach had notice of and participated." *See* Wilda's Mtn., at 7 (Dckt. No. 419).

But the Court does not know any of the details (not even the name of the mediator). How did the parties arrive at a settlement amount of $6,250,000? What was the estate's demand at the outset of the mediation? Did Illini Hi-Reach participate with full information, and complete transparency? And if so, did it object to the proposed settlement at that time? Were there any irregularities? (The Court assumes not, because Illini Hi-Reach never argues that there were.) It is hard to take comfort in the process without knowing much about the process.

To be clear, the Court does not need all of the nitty-gritty details. And the Court does not view itself as the arbiter of whether the estate and JLG cut the right deal. The Court has no intention of second-guessing a settlement and deciding whether the Court would have made the

15

same decision. But under Illinois law, the Court does need to decide whether the proposed settlement is within the generous boundaries of reasonableness before forcing someone else to pay it. And on this thin record, the parties simply have not provided this Court with enough information to make that determination.

The parties did give this Court a copy of the settlement agreement. *See* Settlement Agreement (Dckt. No. 417-1). One provision of the settlement agreement raised a judicial eyebrow.

The settlement agreement says that JLG doesn't have to pay the estate unless and until Illini Hi-Reach pays JLG. *See* Settlement Agreement, at § 3.1 (Dckt. No. 417-1) ("The parties agree that payment of the Settlement Consideration shall not be made until . . . [t]he Settlement Consideration is collected by JLG from Illini Hi-Reach, Inc. and/or the insurers of Illini Hi-Reach, Inc."). And if Illini Hi-Reach doesn't pay JLG, then JLG doesn't have to pay the estate. *Id.* at § 4.0. In that case, the estate and JLG will go back to square one and resume litigation. *Id.* ("In the event that the Settlement Consideration is not paid to Releasor within the time period described in section 3.1 of this Settlement Agreement, then the parties agree that the Litigation shall be recommenced by Wilda in the United States District Court for the Northern District of Illinois.").

So, it basically says that Illini Hi-Reach must pay everything, and if it fails to do so, JLG will pay nothing. And litigation will resume.

That provision could suggest that JLG overpaid, and did so because it knew that it was not paying the tab. The settlement implies that JLG doesn't think that the settlement is worth $6,250,000. Why? Because JLG itself *isn't willing to pay that much*. If push comes to shove, and Illini Hi-Reach can't or doesn't pay $6,250,000 (say, because it files for bankruptcy), then

JLG would be left holding the bag, without funding from Illini Hi-Reach. And in that case, JLG would rather litigate than pay $6,250,000.

JLG is basically saying that the estate's claim is worth $6,250,000 if *Illini Hi-Reach* pays it, but isn't worth $6,250,000 if *JLG* itself has to pay it. If JLG had to internalize the costs of its own settlement choices, then JLG would rather fight than foot the bill that it has agreed to. JLG wants that bill paid only if JLG doesn't have to pay it.

As the saying goes, something is worth whatever someone is willing to pay for it. And here, JLG apparently doesn't believe that the settlement is worth $6,250,000, because JLG itself wouldn't pay it.

But Illinois courts go in a different direction. Illinois courts have rejected the notion that a settling indemnitee's lack of personal financial responsibility makes a settlement agreement fraudulent. *See e.g.*, *Guillen*, 785 N.E.2d at 13; *N.E. Finch Co.*, 370 N.E.2d 160, 163; *Westamerica*, 670 F. Supp. at 821. The fact that an indemnitee is not on the hook does not necessarily mean that the settlement agreement is fraudulent and collusive. *See Guillen*, 785 N.E.2d at 13.

In *Guillen*, a tenant sued a landlord for lead poisoning. The landlord tendered the claim to the insurer, who denied coverage. *Id.* at 3. The landlord and the tenant later settled. *Id.* The landlord agreed to pay $600,000, but the obligation to pay was "subject to the condition that it would 'be satisfied solely through the assignment'" to the tenant of the landlord's right to payment from the insurance company. *Id.* at 3–4. So the landlord had to pay nothing.

The insurance company balked at paying the settlement. The policy required the insurer to pay "those sums that the insured becomes legally obligated to pay as damages." *Id.* at 4 (quoting the policy). The insurance company argued that, under the terms of the settlement, the

insured was "never 'legally obligated' to pay anything." *Id.* The insurer argued that the settlement was collusive and against public policy because the insured was "never placed in any personal financial risk by the agreement." *Id.*

The Illinois Supreme Court rejected the notion that a settlement is collusive simply because an indemnitee has to pay nothing. As a matter of insurance law, the Supreme Court held that the insured was "legally obligated to pay" within the meaning of the policy, even though the insurer was going to pay everything. *Id.* at 11–13.

The Supreme Court recognized that its holding didn't perfectly match the realities of the situation. *Id.* at 12 ("The construction of the 'legally obligated to pay' language adopted by the majority of courts is a technical, rather than practical, one."). But the Supreme Court adopted a "liberal construction" of that policy language because the insurer had breached its duty to defend (which isn't at issue here). *Id.* at 11–13.

That portion of the ruling rested on principles of insurance law, so it is not a perfect fit with the case at hand. But the Illinois Supreme Court went on to address broader public policy concerns. The insurer pointed out that the "insured's own money is never at risk and, therefore, the insured has no incentive to contest liability or damages with the injured plaintiff." *Id.* at 13. And "since the insured is essentially paying with the insurer's money, the insured can, and will, agree to any amount of damages the injured plaintiff requests." *Id.* So, for that reason, the insurance company argued that the settlement fostered "collusion and fraud." *Id.*

Those concerns did not fall on deaf ears. In fact, the Illinois Supreme Court acknowledged that the insurance company's concern "is well taken." *Id.* at 14. But the Supreme Court ultimately concluded that the risk of collusion was not enough to overturn an otherwise reasonable settlement.

18

"[W]e do not find the concern regarding the possibility of collusion enough to warrant voiding the instant settlement agreement. As a majority of courts have recognized, the risk of collusion and fraud can be lessened in cases such as those at bar, if not avoided altogether, by placing a requirement upon the plaintiff to prove that the settlement it reached with the insured was reasonable before that settlement can have any binding effect upon the insurer." *Id.* The Supreme Court then directed the lower courts to consider whether the proposed settlement was otherwise "reasonable under the circumstances." *Id.* at 15.

*Guillen* effectively forecloses a similar argument here. The Illinois Supreme Court in *Guillen* rejected the notion that a settlement agreement is collusive simply because the insurer must pay everything and the insured must pay nothing. The fact that the insured had no liability did not render the settlement fraudulent. So too here. The settlement agreement may not require JLG to pay anything, but that reality does not invalidate the agreement if the settlement is otherwise reasonable.

Illini Hi-Reach makes one other argument that deserves consideration. Illini Hi-Reach argues that the proposed settlement does not fall within the parameters of the contract because JLG has to pay nothing. That argument is similar to the argument about collusion, but it isn't exactly the same. The basic point is that the contract covers JLG's *liabilities*, but JLG isn't liable for anything if it has to pay nothing.

Illini Hi-Reach points to the language of its contract with JLG. The parties entered into a rental purchase option agreement that contained a sweeping indemnification agreement. The provision required Illini Hi-Reach to pay JLG's "losses, liabilities, damages, injuries, [and] penalties." *See* RPO Agreement, at 2 (Dckt. No. 49-2). Specifically:

> Customer agrees to reimburse, indemnify, hold harmless and defend, at Customer's expense, ServicePlus [JLG's affiliate], its subsidiaries, parent companies, affiliate companies, and their agents, officers, directors and employees, against *all losses, liabilities, damages, injuries, penalties*, including, without limitations [sic], bodily injury, death, property damage or other damage arising out of any breach of this Agreement, Customer's violation of any applicable regulations, improper use, possession, operation, erection, dismantling, servicing, or transport involving the Equipment, Customer's contamination of the Equipment by any party, strict liability or negligence or failure to discover a defect, or incurred by ServicePlus in any manner from this transaction, including claims of or liabilities to third parties. Customer agrees to present a claim to its insurance carrier for all such amounts and in the event Customer has no insurance to cover such amounts, Customer agrees to pay ServicePlus for such amounts.

*Id.* (emphasis added).

As Illini Hi-Reach sees it, the settlement agreement does not fall within the boundaries of that indemnification provision, despite its apparent breadth. In its view, JLG did not suffer a "loss[]," because JLG did not *lose* anything. JLG also did not incur any "liabilities," because the settlement agreement does not make JLG liable to pay the estate (in fact, it does the opposite). The settlement agreement does not require JLG to pay any "damages," either. And so on.

That argument has some force. It takes seriously the text of the agreement. And it reflects the practical realities of how the settlement agreement would play out.

A literal interpretation of the plain language would have its virtues. A liability that is the product of an adversarial process engenders confidence. If JLG had gone to trial, and lost, then Illini Hi-Reach could at least take comfort in the fact that JLG suffered a liability after going through the gauntlet of a trial. The adversary process would protect Illini Hi-Reach from overpaying. There is nothing collusive about a judgment after trial.

In that situation, the interests of JLG and Illini Hi-Reach would have been aligned. JLG would have had an incentive to win at trial, and Illini Hi-Reach would benefit from JLG's incentive to fight.

By the same token, imagine if JLG settled, and imagine if JLG's duty to pay the estate was not contingent on Illini Hi-Reach paying JLG first. That is, imagine if the settlement agreement required JLG to pay the estate up front, and that obligation was not contingent on JLG's ability to recoup the money from Illini Hi-Reach under the indemnification agreement.

In that case, JLG would face potential liability. If Illini Hi-Reach dissolved, or filed for bankruptcy, then JLG would be on the hook. So, JLG would have an incentive to cut a good deal for itself when negotiating the settlement, because it might have to pay the bill if Illini Hi-Reach doesn't. Once again, JLG's incentive to cut a good deal would align with Illini Hi-Reach's incentive.

Either way, through trial or a settlement, the adversary process would ensure that Illini Hi-Reach is not overpaying. Think of it like haggling. JLG could fight for a good outcome at trial, or could negotiate for a good deal through settlement. The fact that JLG might have to pay the bill gives JLG a powerful incentive to push for a good deal.

Those incentives might favor an interpretation of the words that sticks to their plain meaning. In a very real sense, JLG hasn't suffered a "loss" or a "liability" if JLG pays nothing. So, one way to read the agreement is that Illini Hi-Reach will pay only if the outcome is the byproduct of an adversary process, meaning that JLG is actually responsible to pay if Illini Hi-Reach isn't.

Requiring real-world liability by JLG – before Illini Hi-Reach has a duty to pay – would ensure that their interests are aligned, and thus ensure that the amount of the indemnification is

21

not inflated. Interpreting a "loss[]" to mean a loss, and "liabilities" to mean liabilities, would mean that the incentives of the indemnitee would align with the incentives of the indemnitor. It would prevent overpayment and fraudulent or collusive agreements with the injured party.

Interpreting "loss[]" as an actual loss, and "liabilities" as actual liabilities, would uphold the plain meaning of the words. And it would fit with the incentives of the parties, too. It would incentivize parties to keep losses and liabilities to a minimum, because they might be on the hook if the indemnitor can't pay.

But this Court does not write on a blank slate. This Court's job is to predict what the Illinois Supreme Court would do. The Supreme Court in *Guillen* held that an insured was "legally obligated to pay" a settlement amount, even though the settlement agreement ultimately required nothing from the insured and everything from the insurer. The Supreme Court favored a "liberal construction" (three times), and supported a broad approach over a "practical" one. *Guillen*, 785 N.E.2d at 12–13.

This Court is duty-bound to follow suit and reach the same conclusion. If the insured was "legally obligated to pay" a settlement in *Guillen*, even though the insured was paying *nothing*, then JLG has suffered "losses, liabilities, [and] damages" even though JLG is paying nothing and Illini Hi-Reach is paying everything. JLG has suffered a loss, liability, and damages in the sense that it was subject to potential liability to the estate.

In sum, this Court must determine whether the proposed settlement is reasonable before it can order Illini Hi-Reach to pay it as the indemnitor. That determination requires a showing by JLG and the estate. But on the record at hand, the parties have not given this Court enough information to make a reasoned determination. They have the burden, and they haven't carried it (not yet, anyway), so the motion is denied.

22

**Conclusion**

For the foregoing reasons, the motions to approve the settlement agreement are hereby denied. The denial is without prejudice. That is, the Court will give the parties another opportunity to build a record about whether the proposed settlement is reasonable. The motion to sever is denied as moot.

Date: February 14, 2022

_____
Steven C. Seeger
United States District Judge